Case 13-6629 Johnny Finn et al. v. Warren County Kentucky et al. Furrow argument not to exceed 15 minutes or so is violated. Bellesley Court, the appellant. The honors may it please the court, counsel. My name is Greg Bellesley, I'm here on behalf of the appellants in this case, the plaintiffs Johnny Finn who is the administrator of Shannon Finn's estate and Sandra Roddy who is the guardian of Mr. Finn's three minor children. I would like to reserve three minutes for rebuttal. Alright. Briefly in a background of this case, your honors, Mr. Finn was a 34 year old father of three minor children. He entered the jail in Bowling Green, Kentucky the afternoon of March 17, 2009 and shortly thereafter was diagnosed as suffering from alcohol withdrawal. By the late evening of March 19, the nurse responsible for Mr. Finn's care testified that he was getting worse, not better. That his alcohol withdrawal had progressed to delirium tremens, which is the most severe form of alcohol withdrawal and which can be fatal if not treated. By 4 o'clock the morning of March 20, Mr. Finn was described as very delirious by a shift supervisor named William Baker who moved him from a communal cell where his cellmates had been agitating in an effort to get him medical care for his condition and put him into an isolation cell. When he did that, he told the nurse, this is approximately 4 o'clock in the morning, he told her he had moved Mr. Finn to the isolation cell. Between that time, 4 o'clock in the morning, and Mr. Finn being found dead or unresponsive at 10.41 a.m. over six hours later lying face down in a pool of yellow vomit, nobody said anything to any of the medical professionals at the jail about Mr. Finn, his condition or what they were seeing. That was despite the fact that the jail had a very, very clear, what the jailor testified was a very clear and unambiguous emergency medical services policy that defined alcohol withdrawal, not delirium tremens, alcohol withdrawal as a medical emergency and required jailors who observed that condition to do four things. You know, of course we're familiar with the facts, the case here was tried to a jury and your position was not successful. There were some re-judgments as to some of the defendants and there were some evidentiary rulings along the way that you might take issue with. Maybe you could tell us with respect to the defendants whose claims were not tried what went wrong there in terms of the summary judgments or the evidentiary issues. I know you have an issue with the jury instructions. You can use your time however you want, but it would just be my suggestion you might want to focus on those things. Absolutely, Your Honor. I just wanted to make sure that I'd set the proper stage. Very simply, first of all, before trial the district court erred by dismissing the jailor, our state claims against the jailor, for a negligent failure to train and supervise the jailors under his responsibility. What the judge said with concern to the jailor is he said that he was dismissing him because the jailor's actions regarding the supervision and enforcement of the EMS policy were discretionary in nature. This court in Hedgepath v. Pelfrey, this was another jail case, another policy case, specifically said, and I'm quoting here, although deciding on the content of policies and training is a discretionary function, the training of employees to adhere to their duties once that content is decided is a ministerial function, and the supervision of employees is a ministerial act when it merely involves enforcing known policies. So dealing with the EMS policy when the judge below decided to grant summary judgment to the jailor and let him out finding that his duty to train and supervise on the EMS policy were discretionary, that cannot be reconciled with this court's opinion in Hedgepath v. Pelfrey, and that requires the reversal of that decision, it just simply does. The court was wrong there. In addition, that had a very prejudicial effect at trial. The jailor took the stand after being called in our case in chief and testifying that the policy was clear, ambiguous, he thought it was clear, couldn't be misunderstood. He came up, was recalled to the stand in defendant's case in chief and he said, and I quote, he said, what I do feel and what I've learned from this is that the policy I had in place, I did a poor job of trying to convey that, trying to write that out, and I will take the blame for that. That it was a poor job of putting down instructions. So the jury has a situation where an individual gets on the stand and says, I take the blame. If there's a policy issue here, my fault. Then when they go back to deliberate, there's no instruction for them to assign responsibility to that individual because the judge had dismissed the jailor prior to trial. So it was error for the judge to dismiss the jailor, to grant him qualified official immunity on our state claims, finding that training and enforcing on that policy was discretionary when this court has said it was ministerial and at trial it was. What if that was for the Monel claim? I'm sorry? If they erred, if the judge erred on dismissing as a matter of law because it was in fact ministerial, not to create the policy but to train on the policy, how does that impact the Monel claim? Well your honor, it would go back for trial on our state claims solely against the jailor. Those claims would be restored and it would go back for a trial against the jailor on that particular argument. Now that's our first argument with regard to the liability and as we said, I just don't think that the district court's decision could be reconciled with what this court had previously said in Hedgepath v. Pelfrey. The second issue was that as a matter of law, the jailors were liable. At least under our state negligence claims, the elements of that claim are duty, breach of duty, and damages. The judge properly ruled... More than that judge, this decision, your court's decision in Berry v. City Detroit says that the evidence has got to be so one-sided as to warrant, in this case what we're asking for is reversal and entry of motion for judgment as a matter of law. Judge I believe we satisfy that burden. The EMS policy, the provisions were clear. They at least, I mentioned there were four things that the jailors were required to do. At least they had to tell the nurse what they were seeing. That was just one of the things. Judge McKinley properly... The jury decided that nothing was done wrong with regard to the policy and with regard to... That's different from the issue of the jailor since he was dismissed and was not in the case. I guess you would still argue that that should go back, the state law negligence claims probably should... You might want to argue it should go back as to the jailor. But on the jury instruction issue, you didn't raise that issue below. What are we to do with the fact that you didn't raise that issue? Are you talking about the... The deliberate indifference instruction. Well Judge, respectfully I think I did raise that issue. The instructions that I submitted to the court directed a verdict on liability on both the deliberate indifference issues and on negligence and only left the question of causation. Did you object to the fact that the district judge or the trial judge, I should say, didn't give that instruction? Your Honor, I did not specifically object to that. Prior to giving the instructions to the jury, Judge McKinley said, I recognize that all the parties have submitted to me their proposed instructions and I recognize that you have an objection to the extent that my instructions differ from yours. And that's all that was said? That's what was said, Your Honor. And how do we get to a standard, frankly, that's winnable for you if your position was, I want my instruction, the court said no, well I object to not getting my instruction. But there's no discussion of the fact that the instruction given is just flat wrong on what constitutes deliberate indifference. It gives both a negligence portion and intentionality and ignores reckless disregard. How do we even reach that if there was not then an objection that says, well, Your Honor, the one you're giving is incorrect? Your Honor, the court has the right to reach that under the doctrine of the plain error of the fundamental error doctrine. We believe that the instruction as drafted with the problems that Your Honor has emphasized satisfies that doctrine. And on that, would you take the same position on the expert, on Dr. Wetter's testimony? I don't know that there's a qualifications issue there, but there certainly appears to be a reliability issue there, a failure to use the reliable principles and methods, speculation. But I'm not finding an objection in the record to the reliability of his testimony. Did you make that? Well, the first thing I did, Your Honor, was I objected to him even being allowed to get on the witness stand. He provided a written report in the opinion. I understand, but let's assume that the technicality of what he included in the written report could be satisfied by his testimony at trial. Is there any objection to the propriety of his use of reliable methods or standards or his speculation as to causation, to speculative testimony in general as violative of Daubert? No, Your Honor, there wasn't. But after his testimony, I requested that the court, I told the judge, and it's in the transcript, I said, Judge, he's trampled all over eggshell skull. That was the word I used. And I asked the court to admonish the jury as to the standard on eggshell instruction. I also tendered the appropriate eggshell instruction in my objections to the court's proposed instructions, provided the court the appropriate instruction under the state case of Morgan. That was discussed, and the judge decided to give a different instruction, and again, recognized that we had submitted instructions and recognized our objection to the extent that what the court submitted didn't conform to what we had proposed. Thank you. May it please the court, my name is Charles English, Jr., and I represent the Warren County defendants. I want to address a couple of the issues that have been raised in questions. First of all, you're correct. This was a seven-day jury trial. Both parties adequately presented their case to the jury. The jury was properly instructed and returned a verdict in favor of the defendants in this case. I suggest that's because you put the jailer on the stand, and he says, I take the blame, but oh, by the way, I'm immune. What Jailer Strode was explaining at the time, the policy that is at issue at this case that was adopted by the Warren County Jail, at the time that policy was adopted, the Warren County Jail did not have a full-time medical staff that was there on site. They did not have nurses. What happened in this case is that the decedent was taken and received medical care and was under the care and supervision of a nurse. That nurse was an independent contractor with the jail who was following the care and treatment of Mr. Finn, and Mr. Finn unfortunately died because of a non-related symptom. He had a heart issue that no one knew about, and there was substantial evidence in the withdrawal. The two may have combined, but that's what the evidence was at trial. Getting back to Jailer Strode and the Hedgepath decision, Judge McKinley appropriately looked at that policy. He appropriately applied the Kentucky Supreme Court Rowan v. Slois case that had specifically decided that the action of supervising inmates in a situation like this, or excuse me, supervising deputy jailers in a very analogous situation, was not a ministerial but was a discretionary act. I understand this court's decision in Hedgepath. That was an interlocutory appeal on a summary judgment motion that involved a completely different policy and a completely different set of circumstances. We believe that that is not applicable. The third thing that I would point out to you is that each of the individuals that were supposed to have been supervised by Jailer Strode, that the appellant is arguing that you should have done a better job supervising, were found by the jury to be not negligent. They didn't do anything wrong. So how can you there come back and say, oh, Jailer Strode, you didn't do a good job supervising these people, but the people who you were supposed to be supervising didn't do anything wrong. So I think the argument fails on that standpoint. I also want to talk to you a little bit about the jury instructions. And first of all, what the appellant refers to is not the jury instruction. What the appellant refers to is the verdict form. Please go back and look at the jury instructions that were actually given by the court in which the court set forth the various elements that have to be proven in this case. Please look at the deliberate indifference instruction, and please note in that instruction that Judge McKinley specifically instructed the jury when talking about the Monell claim and the official policy of Warren County. You are instructed that Jackie Strode, the Warren County Jailer, is a policymaker of Warren County. That was in the instruction that was given on that. So the jury had that information and knew the position of Jailer Strode. There was no failure to properly, and if you look at the instructions that were given by Judge McKinley in this case, they were correct under the law. Help me with that. I'm struggling with the deliberate indifference instruction, which I'm finding at page ID 2714, speaking of the second element that you have to determine on deliberate indifference. In other words, you must find that the deputy jailer intentionally refused or failed to take reasonable measures to address his serious medical need. And then the next sentence is, mere negligence or a lack of reasonable care on the part of the deputy jailer does not constitute deliberate indifference. It just seems to me that those are really contradictory statements, one requiring intentionality, one then bringing in the negligence standard without any reference to reckless disregard. Tell me, give me your best argument for why you think that that's an appropriate statement of the law regarding deliberate indifference. We believe that that is appropriate when you also look at the fact that there was, that each of those jurors also received a, or also, the jury was also instructed on a state law negligence claim for them. So you have both instructions. But isn't this the deliberate indifference instruction? It is. That's where I'm struggling. I understand the negligence instruction, but I'm struggling with the deliberate indifference instruction. We believe that this was the appropriate instruction. There was no objection to this language that was included. If you look at the language that's included in the most forms that are used by the court, I think it appropriately recites what the standard is that the jury is supposed to apply. In terms of recklessness, in order for there to be a finding of a constitutional violation, it can't just be, oh, we could have done a better job. It has to be more of the... Reckless disregard is different from intentional refusal or intentional failure to take legal measures. It's, I think that's my struggle, is the intentionality versus the reckless disregard. Is there any other part of the instruction you would direct us to, to bolster your argument that the entirety of the instructions was satisfactory? Well, I believe that if you look at the elements of what the jury had to find regarding the 1983 actions of Martin, Maxwell, and White, that those elements are specifically explained in there. We believe that this instruction does appropriately apprise the jury. I understand Your Honor's concern about the recklessness standard, but yet I think this language has been specifically approved by the courts. But we don't even get there if there's no objection. Correct. I mean, if you use a district judge to instruct the jury, and then you don't tell them it's flat out wrong, you can't go up to the Court of Appeals. Correct. And there was no objection to this specific instruction. Well, he says he presented conflicting instructions. They were not accepted, and therefore, that's the objection. But he has to submit instructions that are appropriate, and his instructions were not appropriate. And so, if yours were flat out wrong, it's okay because he didn't object? If he comes in and says, I have this problem with this language, yes, if he doesn't say anything, then it is waived, I think is the appropriate position for this court to review it. Only one other quick question, not to use up your time, but can you give me the specifics of why you think Hedge Path doesn't change the issue? Well, number one, I think that Hedge Path was on an interlocutory appeal. Number two, I think if you look at the, Judge McKinley specifically looked at the policy in this case and determined that there was no policy that specifically spoke to Jailer Strode's obligations to appropriately, or to supervise. Number three, I think you get to the point, you have to look at the, well, you ought to look at the Rounds County versus Sloas case, which was a specific case involving supervision of jail employees by a jailer. Number four, I think you have to look at the jury's verdict, which I think you can in this particular case, and that the actual individuals who were alleged to have been negligent in not following that were found by the jury to not be negligent. The jury found that there was no issue there. So I think taking that- Is there a distinction though in the law between ministerial and discretionary in drafting or creating a policy and training on the policy? Well, yes, there is, but- The duties are different, aren't they? The duties are different, but at the same time there was more than sufficient evidence that's throughout the record about the training that the jail staff received on this specific policy. And there was also testimony at trial, what this court can consider, that they were appropriately trained and that they followed the policy appropriately, that they complied with the policy. Which policy, the written policy or the informal policy, just to leave it to the medical people? The written policy. There was ample evidence that was a disputed fact at trial, that there was evidence on both sides and the record is complete with examples and testimony of our expert, of the jail staff, of others, that they followed the policy. This was not a case where we came in and said, oh, this is really not what takes place, but we looked at the policy, there has to be a medical emergency, and we followed it. Granted, they had a- Is there evidence in the record that Strode said that there was no training on this policy either before or after the verdict? Absolutely, there was evidence in the record that Jailor Strode talked about the training that the jailor- Training on this policy. on this policy and the fact that the jail staff goes through in-house training on a proper procedure. They receive training through the state, but there was also training and discussion on this particular policy. Now, again, that was a disputed fact that Mr. Besley did a heck of a job beating this up on a trial. I mean, that was primarily his case. They didn't follow their own policy, and we said we did, and that's why we have a jury to decide those issues. Except for as to Jailor Strode, since he was not a defendant. That is true, but I do think that in this particular case, Jailor Strode was, when you particularly look at the training policy and the instruction that was given and the totality of the facts that were applied, that Jailor Strode was very much a part of this trial. Was there a specific negligence? Their issue in this case is we had no negligence instruction that was given to Jailor Strode. Did Jailor Strode comply with the duties, and was that a substantial factor in causing the defendant's death under state law? If you go back again and you look at the fact, well, the people who he was supposed to have been supervising, according to the jury, were not negligent. How can we then go back and say, well, your supervisor was negligent? I think that's illogical, and I don't think that would be an appropriate way, particularly when you look at the facts of this case. Can you let the Jailor out before that determination is made by the fact finders? In this particular case, you can because of the holding in the Round County case. When you go back and you look at the specific policy and what Judge McKinley did at that time, and the specific findings that are not specific findings, but application of the Kentucky law at that time, then yes, I think you can hold that and can say that that isn't appropriate. Of course, there's not been a jury verdict on the Jailor in terms of whether he was negligent under the claim of failure to train. If you look at his responsibilities being divided into two things, one, whether he was negligent in drawing up the Jail policy, and two, whether he appropriately trained the wasn't given to the jury with respect to Mr. Strode. They could have decided, for example, that writing the policy was a discretionary act, but the training would be a ministerial act. So even if the plaintiff couldn't get to the jury on the promulgation of the policy, they might be able to get to the jury on the negligent training. What would you say about that? I think in this particular case, when you apply the law that was decided at the time that this case was decided, that the training of the policy was considered to be a discretionary act. As I said, that was specifically addressed in the Rowan County case. The Hedgepath case was never cited to Judge McKinley. It was never brought up. It was never argued. You don't have a case that says the training of staff is always a discretionary act instead of a ministerial act, do you? Well, the Rowan County case, what it held in that particular case was, if I can, a little bit over time. On page 29, this is the Walker v. Davis case. That case, it is a sub-case, it was back in 2009, it says supervision and training of staff personnel was a discretionary function of the case. That's Walker v. Davis. You mean in that case, but you don't have a case where it says that training is always a discretionary act rather than a ministerial? At least I don't know of such a case, ma'am. I don't know of a specific case. I think you have to look at each individual policy and the court has to make a decision based upon that particular policy. I think the Kentucky Supreme Court in Rowan County v. Sloas came very, very close to that when it said that the training of staff of state prisons on the evidence at hand in this case was a discretionary function. That's a direct quote from the Kentucky Supreme Court specifically dealing with a jail case. I think that's pretty close. Okay. All right. I see you're out of time. Thank you. Counsel, you have three minutes. Your Honors, briefly, the interlocutory nature of that appeal is not relevant. That decision is not policy specific. The court in Hedgepath said the law on this issue is well settled. When a policy is decided upon and it's written down, the duty to train and supervise on that policy is ministerial, not discretionary. The jailer didn't have the right to ignore the EMS policy in this case. He didn't have the right to tell his jailers to do something different. The policies in this case specifically said that the jailer had a duty to establish and the EMS policy said that all officers are trained to respond to medical emergencies since an inmate's life may depend on appropriate first aid. Did you bring Hedgepath to the trial court judge's attention? Your Honor, I think that the Hedgepath case came out after motions for summary judgment. I believe we brought it to the court's attention on motions for new trial. So, the court ruled first on motions for summary judgment, let the jailer out, then this court came down with its decision in Hedgepath. Now, Hedgepath didn't break new ground, Your Honor. This court said the law is well settled because, and it cited the signal case out of Kentucky, Yanero v. Davis, for that position, but the court said the law is well settled and it had been. So, we did bring that to the court's attention, but it was post-trial. With regard, Your Honor, to the issue of the effect of the policy, their own jail expert said in testimony under cross-examination, he said if the jailers had followed the EMS policy to the letter, Mr. Finn would have been taken to the hospital 1130 the night before he died. And that was their obligation to do so. That was their ministerial duty as correctly found by the district court. The on-the-job training that counsel mentioned, that was effective only to permit the deputy jailers to effectuate the EMS policy. The jailer said they didn't have the training. They weren't medical professionals. They couldn't see an instance of alcohol withdrawal and have the training to decide whether that was serious enough to merit an emergency response. Instead, they had to at least tell a medical professional, a nurse, and let her do it. Had they done that, Mr. Finn would still be alive. Thank you, Your Honor. Thank you. And the case is submitted.